UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA ANN FAUL,

   Plaintiff,           Case No. 1:15-CV-1219

v.

                  HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Patricia Faul seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.68, 117.) She completed high school, and was previously employed as a collection clerk, teller, tractor trailer truck driver, and retail store manager. (PageID.117, 132.) Plaintiff applied for benefits on September 2, 2011, alleging that she had been disabled since July 30, 2011, due to fibromyalgia, carpal tunnel syndrome, multiple joint arthritis, tendinitis, and a cervical spine impairment. (PageID.138, 247–257.) Plaintiff's applications were denied on December 7, 2011, after which time she requested a hearing before an ALJ. (PageID.167–173.) After conducting an administrative hearing, ALJ Thomas Walters rendered a written decision dated November 1,

2

2012, finding Plaintiff was not disabled. (PageID.145–158.) On January 28, 2014, however, the Appeals Council remanded the matter for further proceedings. (PageID.159–163.) Accordingly, ALJ Walters held a second hearing on May 12, 2014, at which both Plaintiff and a vocational expert (VE) testified. (PageID.113–136.) In a written decision dated June 18, 2014, the ALJ again determined that Plaintiff was not disabled. (PageID.68–85.) On September 24, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.33–38.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

In his second decision, ALJ Walters determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.73.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) fibromyalgia; (2) carpal tunnel syndrome; (3) degenerative disc disease of the cervical spine; (4) depression; (5) arthritis; and (6) lateral epicondylitis. (PageID.73.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.75–76.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the claimant can lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can walk or stand for six hours and sit for six hours. She can only do simple unskilled work with simple, routine, repetitive work instructions. The claimant cannot work around unprotected machinery or unprotected heights. She can occasionally bend, turn, crouch, stoop, crawl and kneel. The claimant can do no walking beyond two to three city blocks. She can frequently handle and finger with both upper extremities

(PageID.76.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.79.) At the fifth step, the ALJ questioned a

vocational expert (VE) to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: usher (2,000 Michigan jobs), counter clerk (3,000 Michigan jobs), and retail salesperson (2,500 Michigan jobs). (PageID.133.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.80.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from her alleged onset date through June 18, 2014, the date of decision. (PageID.80.)

## DISCUSSION

### 1. The ALJ Properly Evaluated the Medical Opinions in the Record.

Plaintiff first argues that the "ALJ failed to properly weigh the medical opinion evidence" in the record. (PageID.686.) Plaintiff's Statement of Errors does not identify the opinions she claims the ALJ failed to properly consider, however the body of her brief highlights three different opinions. While not a model of clarity, it appears she argues the ALJ was required to give each of these opinions controlling weight. (PageID.700–701.)[2]

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.

---

[2] In a related argument, Plaintiff asserts that the ALJ "failed to cite to any specific medical evidence, nor did he rely on any persuasive non-medical facts that supports the RFC finding."(PageID.702). The portion of the ALJ's opinion dealing with the RFC assessment spans three pages and includes a summary of Plaintiff's testimony, the ALJ's credibility analysis, a discussion of the medical evidence, and a summary of the opinion evidence. (PageID.76–78.) While the ALJ could have been more clear, it is evident that he discussed at great length the evidence of record and how such supported his RFC determination. (PageID.78.) The ALJ did not substitute his lay opinion in doing so. This argument is, therefore, rejected.

1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

For reasons articulated below, the Court finds the ALJ did not err in discussing these opinions.

   *A. Ms. Erica Nyman, PA-C and Dr. Lee Stuart.*

On March 21, 2014, Ms. Erica Nyman, a certified physician's assistant, completed an impairment questionnaire finding Plaintiff to be much more limited than that found by the ALJ. Among other things, she indicated that during a typical workday Plaintiff could only sit for a total of four hours and stand or walk for a total of one hour. (PageID.557.) Plaintiff would also need to be able to move around every thirty to sixty minutes before being able to sit down again. (PageID.558.) Ms. Nyman also found Plaintiff was "essentially precluded" from using her right upper extremity, and significantly limited from using her left upper extremity, to grasp, turn, and twist objects, as well as use her hands and fingers for fine manipulations. She was significantly limited in using both upper extremities for reaching. (PageID.559.) Ms. Nyman indicated that Plaintiff would need to take unscheduled breaks every thirty to sixty minutes for a period lasting ten to fifteen minutes, and that were she to work, Plaintiff would miss about one to two days of work each week. (PageID.561.) The questionnaire was accompanied by an explanatory letter. On it, Ms. Nyman noted that Plaintiff suffered from fibromyalgia, arthritis, and lateral epicondylitis and described the difficulties Plaintiff experienced because of those conditions.[3] (PageID.563–564.) She concluded that she did not believe Plaintiff could complete full time work. (PageID.564.) Both documents were cosigned by Dr. Lee Stuart, a physician at the same practice as Ms. Nyman. (PageID.562, 564.)

---

[3]Lateral epicondylitis is also known as tennis elbow and is a condition characterized by overloaded tendons usually due to repetitive motions of the wrist and arm. *Tennis Elbow,* MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/tennis-elbow/home/ovc-20206011 (last visited Sept. 27, 2016).

7

Ms. Nyman's opinions were not subject to the treating physician rule. This is so because as a physicians' assistant, Ms. Nyman is not an acceptable medical source. *See* 20 C.F.R. 404.1513(a), (d)(1); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014); *Jones v. Colvin*, No. 7–14–cv–36, 2014 WL 4716517, at * 4 (E.D. Ky. Sept. 22, 2014) ("The Social Security regulations make clear that physician's assistants are not 'acceptable medical sources,' but rather 'other sources[.]'"). Because Ms. Nyman was not an acceptable medical source, the ALJ was not required to provide "good reasons" for the weight given to her opinion under 20 C.F.R. § 404.1527(c)(2). *See, e.g.*, *Hughes v. Comm'r of Soc. Sec.*, No. 1:11–cv–66, 2015 WL 4076931, at *8 (W.D. Mich. July 6, 2015); *Gordon v. Colvin*, No. 2:14–cv–213, 2015 WL 350617, at *6 (S.D. Ohio Jan. 26, 2015) (collecting cases); *Borden v. Comm'r of Soc. Sec.*, 1:13–cv–2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec.19, 2014) ("Other source" opinions are "neither entitled to controlling weight, nor subject to the 'good reasons' requirement of the treating physician rule.").

Nevertheless, SSR 06–03p states that the Commissioner should evaluate the opinions expressed by other medical sources, such as Ms. Nyman:

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

8

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006).[4] Despite this language, however, SSR 06–03p requires only that information from other sources be "considered." *Id.* This is not a demanding standard, and it was easily met here.

Here, the ALJ noted his obligation to consider "other source" opinions under SSR 06–03p and set forth a reasonable explanation for giving only "little weight" to Ms. Nyman's opinion. (PageID.76–78.) The ALJ thus satisfied his obligation to consider this "other source" opinion. The addition of Dr. Stuart's signature to Ms. Nyman's opinion does not require a different result. Plaintiff's assertions to the contrary, there is no evidence that Dr. Stuart qualifies as a treating physician. Indeed, the record does not appear to contain any treatment records from Dr. Stuart that demonstrate he ever examined Plaintiff. In the absence of treatment records, it was Plaintiff's attorney's job to elicit testimony from his client establishing a treating physician relationship by having her provide the details of how often, if ever, she met with Dr. Stuart, the duration of such meetings, and the specific nature of any treatment provided by Dr. Stuart. Plaintiff did not present such evidence. As such, Dr. Stuart cannot be considered a treating physician, and the ALJ was "not under any special obligation to defer to [his] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506–07 (6th Cir. 2006). This argument is accordingly rejected.

  B.  *Ms. Sue Haasch and Dr. James Horton.*

On December 12, 2011, Ms. Sue Haasch, an occupational therapist, conducted a functional capacity evaluation of Plaintiff. (PageID.531–544.) The evaluation assessed Plaintiff in

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

several categories, including Plaintiff's own perception of her pain and abilities, her coordination, tolerance while standing, use of her upper and lower extremities, grip strength, ability to push, pull, lift, and carry, and time sitting and standing. Ms. Haasch concluded the evaluation by summarizing the tests she administered to Plaintiff. She also noted that Plaintiff had given less than maximal effort as well as inconsistent effort during grip strength testing, and also was inconsistent when reporting her pain levels. (PageID.542–543.) Still, Ms. Haasch found that Plaintiff would have a low tolerance for light duty work and recommended a conditioning program. If Plaintiff were to complete that program, she still should only "begin a light duty part time job that would allow her to change positions, being able to move freely from sitting to standing." (PageID.543.) The evaluation was cosigned by Dr. James Horton. (PageID.544.)

Similar to the analysis conducted above, the regulations describe an occupational therapist only as an other source. 20 C.F.R. § 404.1513. As such the ALJ was only required to "consider" Ms. Haasch's opinion, and the ALJ's analysis easily passes muster under this deferential standard. *See* SSR 06–03p. The question here is what to make of Dr. Horton's signature. Unlike Dr. Stuart, who did not appear to examine Plaintiff, it appears that Plaintiff visited with Dr. Horton on three occasions in 2011 prior to the date of Ms. Haasch's evaluation. (PageID.354, 462, 467.) As such, Dr. Horton might possibly qualify as a treating physician. But the record is clear that Dr. Horton played no part in Ms. Haasch's evaluation other than to simply add his signature to her opinion. Under the facts of this case, the Court finds that the addition of Dr. Horton's signature did not transform Ms. Haasch's opinion into the opinion from a treating physician. To find otherwise "would require a stretch that this Court is not willing to make." *Benjamin v. Comm'r of Soc. Sec.*,

No. 5:12-CV-01372, 2013 WL 3776792, at *4 (N.D. Ohio July 17, 2013) (reaching a similar conclusion where the physician was not present at the evaluation).

Even if the Court were to consider the opinion as one from a treating source, the ALJ's discussion easily survives scrutiny. As noted above, the ALJ found that the opinion was internally inconsistent with the evaluation's findings that Plaintiff gave less than maximum effort and had inconsistent reports of pain. The ALJ also found that the opinion was not consistent with Dr. Horton's reports. (PageID.77.) This statement is supported by substantial evidence. For example, on September 26, 2011, Dr. Horton noted that x-rays of Plaintiff's elbow found no evidence of osteoarthritis or enthesopathy. (PageID.354.) On November 4, 2011, only a few weeks before Ms. Haasch's evaluation, Dr. Horton described Plaintiff's thumb as doing great, and indicated that Plaintiff should continue with only conservative treatment. (PageID.462.) The ALJ reasonably found such reports inconsistent with the severity of Ms. Haasch's opinion. Accordingly, Plaintiff's claim is rejected.

C.   *Dr. John Flood.*

On April 8, 2014, Plaintiff underwent a consultative examination with Dr. John Flood at the request of Plaintiff's attorney. (PageID.625–636.) Dr. Flood filled out a questionnaire similar to that completed by Ms. Nyman, and summarized his findings in a letter to Plaintiff's attorney. The ALJ gave only "little weight" to the opinion. (PageID.78.) In a short argument, Plaintiff argues the ALJ could not discount the opinion merely because it was solicited by Plaintiff's attorney. (PageID.701.)

There is some element of truth to Plaintiff's claim. Indeed, courts have recognized that the results of a consultative examination should not be rejected solely because it was arranged

and paid for by the plaintiff's attorney. *See Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. 2001); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989) (stating that "[t]here is nothing fundamentally wrong with a lawyer sending a client to a doctor"). But there is also nothing wrong with an ALJ noting the circumstances by which the opinion was given. Here the ALJ did not rely solely on the fact that Dr. Flood examined Plaintiff at the request of Plaintiff's attorney, but noted it along with his determination that the doctor's opinion was inconsistent with the record. As the ALJ further discussed, the record contains treatment notes that documented negative x-rays, normal grip strength, and normal range of motion with the extremities. (PageID.78.) The ALJ's description here is accurate and supported by substantial evidence in the record. Accordingly, Plaintiff has shown no error.

### 2. The ALJ Properly Discounted Plaintiff's Subjective Allegations.

In support of her claim, Plaintiff provided statements and testimony that reflected limitations much greater than those recognized by the ALJ. For example, she testified that she was unable to use her hands and fingers to button or snap, nor could she use them to turn a door knob or the ignition in her car. (PageID.119–120.) She also testified that she could only stand for ten minutes, and walk for one or two blocks. Even when reclining, she testified she could not stay in that position for long. (PageID.125.) The ALJ found Plaintiff's statements to be "not entirely credible." (PageID.77.) Plaintiff argues the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other

symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship*, 874 F.2d at 1123). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See*

*Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

> The ALJ stated he was discounting Plaintiff's statements because:
>
> In December 2011, Sue Haasch, an occupational therapist, noted the claimant demonstrated giving less than maximal effort as well as inconsistent effort during isometric grip testing. She further noted the claimant demonstrated that she was inconsistent when reporting her pain levels both at the beginning and the end of the functional capacity examination (Exhibit 12F). In June 2012, the claimant reported her usual pain was 9/10 and her worst pain was 10/10 but had no emergency room visits due to pain and did not want to try any further medications (Exhibit 9F p.4). The claimant testified she has problems using her hands and fingers, but stated she uses a cell phone.

(PageID.77.) Plaintiff makes several arguments regarding this analysis. She first claims that there is no evidence that she was exaggerating her capacity to perform during the functional capacity evaluation. (PageID.704.) While that may be true, that is not what Ms. Haasch reported. The ALJ noted that Ms. Haasch found Plaintiff put forth "less than maximal effort as well as inconsistent effort during isometric grip testing." (PageID.542.) Plaintiff attempts to explain this by noting that she could did not use her thumbs during the testing due to pain. (PageID.700.) But this fact was expressly noted by the therapist in the evaluation, and she nonetheless concluded that Plaintiff put forth less than maximal effort. The ALJ reasonably concluded this reflected negatively on Plaintiff's allegations regarding her grip strength. Plaintiff also faults the ALJ for noting that she did not go to the ER or ask for a change in medications despite her complaints of pain by noting that on another occasion she had rated her pain as exceeding a scale of one to ten. Plaintiff is apparently arguing that

she did not have a "good understanding" of the pain scale. (PageID.542, 700, 704.) The Court disagrees that Plaintiff's statement to Ms. Haasch demonstrates a poor understanding. If anything, it tends to support the ALJ's conclusion that Plaintiff's reported pain levels were not as severe as her actions would demonstrate. Finally, Plaintiff argues that the ALJ was wrong to find that her ability to use a cell phone undercut her credibility. (PageID.704.) The Commissioner apparently agrees, noting that Plaintiff had testified she only used one finger when using the phone. (PageID.130, 721.) The Court disagrees that this is an invalid reason. Both in her function report and testimony to the ALJ, Plaintiff reported extremely severe limitations with the use of her hands and fingers that amounted to an almost complete inability to use her hands and fingers. Plaintiff's ability to use her phone–even if with only one finger–is inconsistent with the severity of her allegations. Moreover, contrary to Plaintiff's assertion, the ALJ did not err in considering this daily activity against her allegations. *See* 20 CFR § 404.1529(c) (including daily activities as a relevant factor when evaluating the intensity and persistence of a claimant's symptoms).

For all the above reasons, the Court finds the ALJ did not err in finding Plaintiff's allegations to be not entirely credible.

   **3. The ALJ Properly Accounted For Plaintiff's Moderate Limitation Concentration, Persistence, and Pace.**

Plaintiff finally argues that while the ALJ found that Plaintiff had moderate difficulties in concentration, persistence or pace, the ALJ failed to account for these limitations in the RFC and hypothetical to the VE. (PageID.705.) Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). Plaintiff's reliance on this authority, however, is misplaced and unpersuasive.

In *Ealy*, the claimant's application for disability benefits was denied by the Social Security Administration following a hearing before an ALJ. *Id.* at 506. The medical record before the ALJ contained the conclusion by a physician that the claimant was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that the claimant "has moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510. Despite expressly adopting the limitation articulated by the physician, the hypothetical question which the ALJ posed to the vocational expert stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by the physician, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* The court concluded that because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516–17.

Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to "simple work" is somehow legally deficient. *See, e.g.*, *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Comm'r of Soc. Sec.*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same). Rather, *Ealy* simply

16

reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g.*, *Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the vocational expert. Here, no such shortcoming or inconsistency exists. The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 7,500 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical question the ALJ posed to the vocational expert. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: September 30, 2016         /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE